We'll hear argument next in Diego-Diego v. Garland. And, Counsel, before you start, can we just make sure that, Counsel, for the Attorney General, you're able to hear us? I can hear you and see you all. Thank you. Thank you. All right. You may proceed. Good morning, Your Honor. I'd like to reserve three minutes for rebuttal. You may. May it please the Court, my name is Sean Perdomo, and I represent the petitioner, Lettie Diego-Diego and her children. This Court must remand Lettie's case to the agency for the proper application of the Unable or Unwillingness Legal Standard. There are substantial facts compelling the conclusion that the Guatemalan government is unable to protect Lettie, making any report to the police futile. As the record demonstrates, violence against women is pervasive, and the government's efforts to protect women have been ineffective. On page 219 of the record, Guatemala is reported to have the third highest femicide rate globally, with over 2,200 violent deaths of women between 2014 and 2016, yet only 59 perpetrators were imprisoned. While the Respondent's brief mentions there were 1,600 convictions in 2017, it omits the concluding sentence in the UNHCR report on page 230, noting insufficient resources for protection, including funding for specialized shelters. On page 226 of that same report, violent deaths of women increased by 8 percent to 662, despite hiring more national civil police. The 2018 State Department report at page 366 noted that the laws are not enforced effectively. Lettie's experience reflects indifference to her suffering. On page 89, Lettie's father reluctantly took her in because he blamed her for cohabitating with her abuser Francisco. Lettie's father did not tell her to go to a shelter, and there is no evidence in the record showing that Huehue Tenango had any services for women. On pages 86 through 87 and 124, Lettie testified police were 30 to 40 minutes away, and she expressed doubts they would not assist her due to her status as the unwed mother of Francisco's two children. Her family's response reflects that the government's efforts to bring awareness to end violence against women have been ineffective. At pages 181, 183, and 191, when Lettie informed her father of the violence, he told her, quote, you had it coming. When she shared her suffering with Francisco's mother, the mother was happy to hear about it. Even Lettie's own mother, aware of the violence, sent her money but never suggested going to the police. Despite this evidence, the immigration judge wrote a single sentence about a 24-hour service center for violence against women survivors as substantial evidence that Guatemala was both willing and able to protect Lettie, and that was at page 41. The IJ failed to mention that those service centers were not in all departments of Guatemala, and that's at page 366 of the record. The record shows the Chimaltenango, not Huehuetenango, where Lettie lived, had those services. And that's at page 240. These are the arguments that I've prepared for the substantial evidence standard of review should this Court apply the unable or unwillingness standard. Petitioner is also asserting that there is legal error that requires remand because the immigration judge and the BIA applied the incorrect legal standards to determine whether or not Guatemala was able to protect Lettie. So maybe we start with the immigration judge. Aside from, I understand your substantial argument, substantial evidence argument, but what is the, what would you point to to suggest that the immigration judge misunderstood the legal standard on unable or unwilling to protect? Well, the immigration judge applied a gap analysis. Although the BIA specifically referenced the gap analysis, the immigration judge did not apply the futile or dangerous standard for determining whether a police report was required to demonstrate whether the government of Guatemala was able to protect her. The IJ specifically said a report is not essential for establishing government or unwillingness or inability. An applicant could establish this in other ways, right? And then he went on to say that he didn't think you had done that on the record. But what's the legal error there? The legal error is that the judge at page 41 used this rule, and that is that Guatemala's laws or customs need to deprive her of any meaningful recourse to governmental protection. That is quite a different standard from futile or dangerous. In the rule that the immigration judge is applying, he has to, he is requiring the petitioner to show that Guatemala deprives her, either through creating laws or because of their customs, the ability to protect. And this was a reading of INRI-SA, a Board of Immigration Appeals decision from 2000, where they discussed the futile or dangerous standard. And in that case, Morocco had laws that prevented women from reporting violence. But it was also part of the custom and the abuses that she suffered at the hands of her father that also showed that making a report to the police would have been futile in any case because of the customs. This is the standard that the immigration judge had applied. Is that a higher standard than if the gap thing did not exist? In other words, the case is Bringas-Rodriguez v. Sessions? Yes, Your Honor. I believe it is a heightened standard because Bringas-Rodriguez at pages 1066 through 1067 discuss how under the gap standard, how the gap in reporting could be overcome by other evidence. And among those, at number one, cited in 1066 to 1067, it states exactly the same rule that the immigration judge is applying. But in this instance, where there is a failure to make a police report, this is more appropriately analyzed under the Ornelas-Chavez version of determining whether or not a report would have been futile or dangerous. So the Board of Immigration Appeals, when it reviewed the immigration judge's decision, and it kind of helps to contextualize when the immigration judge's decision was made. It was made at the time when matter of AV, precedent by the Attorney General, set a heightened standard for the unable or unwillingness standard. Under matter of AV, the government had to condone or be completely helpless in protecting victims. And that is a much heightened standard. And at that time, the immigration judge did reference that decision. Since then, it was vacated. And by the time that it got to the Board of Immigration Appeals, the Board of Immigration Appeals had cited to another board precedent, matter of CGT. Although it cited to matter of CGT, it did not apply the futile or dangerous standard to determine whether or not the police report would have been determinative as to the government's ability to protect her. Matter of CGT requires the board also to engage in a fact-based inquiry, and I think this is where the analysis is lacking on the part of the agency. Under matter of CGT, the agency needs to consider three things, and those are the testimony, corroborating evidence, and country conditions. In this instance, only the country conditions were considered. None of the statements that were made by her family when she reported these incidents to him were taken into account. And so do you, I mean, do you dispute that reporting to the police is one, if you show that you reported to the police and they didn't do anything, that would be one way to establish that the government is unable or unwilling to protect you, right? Yes, Your Honor, but even if the police do something, under JR versus Barr, and even at Sixth Circuit case, Antonio versus Barr, 959F.3D at 778, and that's a 2026 circuit case, even if there's some official responsiveness, that does not completely establish whether or not the government of Guatemala is able to help you. Fair enough. But okay, so one way to show it would be, you know, I reported it and the response was nonexistent or deficient. And if you didn't report it, then you would need to show something else, right? That's correct, Your Honor. And isn't that all that the board said? I mean, they used the word gap, and we've said, you know, don't use the word gap. But in substance, they said, well, we don't have a report, so we need to look for something else. We think that something else isn't there, right? So you think that something else is there, and they were wrong on the evidence, but in terms of the legal standard they applied, it seems like they did it right, didn't they? I don't believe that they did, Your Honor. They do apply the unable or willingness standard. However, the importance of the police report, it was paramount to the immigration judge because he stated that it's unknown how the government would have reacted. That's not the proper standard. The proper standard is laid out in the board's own precedent in a matter of CGT, and that is that the testimony of the petitioner, as well as the corroborating evidence, need to be taken into consideration, which those two things were not. And if they were taken into account, it would have shown the customs in Guatemala and how there's a system of patriarchy and how women are viewed as property and how abuses still continue to this day. In the country conditions evidence, it points out that 15 women are murdered a week as a result of violence. Had they considered the statements of her family, much like this Court did in the case of Velazquez-Gaspar, in Velazquez-Gaspar there were country conditions evidence, and Friends actually urged her to make a report, and that was substantial evidence in that case that Judge Callahan said was sufficient to show that the government was perhaps able to help. But in this instance, you have the opposite.  What's your, excuse me, what's your evidence that the board, or what would you point to to show that the board did not consider all of the evidence you say they needed to? Because they said the respondent's evidence does not otherwise establish the government was or would be unable or unwilling to protect the respondent. So, normally we presume they've looked at the record. So why should we think that they were ignoring some of the evidence when they said that? Because part of the analysis regards customs, and none of the customs are mentioned. And they don't need to specifically mention all of the evidence, do they? I mean, can't they just say, we've looked at the evidence, we don't think it supports the claim? Well, on this record, it's silent whether it was considered or not. Although they said they considered it, it's unknown. And the country conditions evidence that were cited by the immigration judge were completely lacking. He cited one sentence from Exhibit 9 at page 6 to establish that there is a service center that's available that would be capable of helping her. And when you look at the entire 2018 report, it says itself that the government is ineffective at preventing these sorts of acts of abuse. So pointing to one sentence out of an entire State Department report, and also all of the other news articles that are attached, even statements that are made by the prosecutors in charge of these femicide units, I believe that there is overwhelming evidence showing that the government's unable to protect Letty. And that one sentence about a service center, which the only evidence we have in the record is to where that location is in Chamal Tango, not in Huehuetenango, where she lives.  Thank you.  So we took you past your time, or I guess I took you past your time. We'll give you two minutes for rebuttal. Thank you, Your Honor. And we'll hear from the government. Good morning, Your Honor. Spencer Shoupard for the United States. May it please the Court. The agency does not commit automatic reversible legal error when it uses or doesn't use certain magic words. In this case, we have petitioner's identified gap in proof language or futility, talked about here just in his argument. Bringus-Rodriguez, the case the petitioner relies in in chief, disapproved of the gap in proof language because it created an appearance of a heightened standard for the unable and willing element. Specifically, it made it seem as though a police report was either required, and if it wasn't filed, then the petitioner would have to justify having not filed it. Instead, the Court clarified that the agency has to look at the evidence as a whole. What it didn't do was say that the agency couldn't look at police reports or invoke them in coming to this conclusion. It's quite the opposite. This is important evidence. So, this gap in proof language survives, as does the futility and dangerousness sub-analysis that comes along with it. And we can see that in cases that postdate Bringus Urrutia from my brief. There are others. And it makes sense that the language would survive because any time a party has an evidentiary burden, there is literally a gap in proof to fill with the proof, with evidence. The Magistrate could do that to show unable and willingness by through her testimony or through her corroborating evidence, expert reports, country-conditioned evidence. There's plenty of ways to fill the gap, but it does have to be filled. And even in Bringus, the Court concluded that the petitioner's failure to file a report was justified, even though it didn't have to come to this conclusion, but it did conclude that her failure to file a report was justified because, or his failure to file a report was justified because it would have been futile, it would have been no recourse for him to go to the police. So, it's not about magic words. It's about making sure the agency didn't ignore or overweight certain evidence. And the IJ followed Bringus, in this case, to a T. He acknowledged that the petitioner hadn't filed a police report. He also correctly acknowledged that she didn't have to under the law. But once he recognized that she had testified that she couldn't go to the police, in other words, that it would be futile, he needed to do something with that evidence. He was not at liberty to ignore it. And so, what he did was he tested the reasonableness of the bases for her beliefs, her belief about the law didn't protect people like her or her anecdotes about hearing something second or third-hand about how some men had been released. He found that these weren't very rigorous beliefs. So, and then there's also her very candid and repeated testimony that she does not know what the police in her town or her area would do if contacted. She was very clear about that despite repeated questioning from her attorney. So, lacking anything that he could give much weight to about her belief in the effectiveness of police, the IJ turned to the only remaining evidence, which was the country condition evidence. And as I stated in the brief, it's a mixed bag. I know the petitioner kind of added a bit more color to what was in the brief previously, but what it shows is that Guatemala has a problem with domestic violence and that it is doing things to try and correct that. And these aren't empty actions, these aren't just words. Guatemala has instituted some reforms with some teeth. Petitioner, as the IJ cited, is not entitled to live in a crime-free society as none of us are. But in this case, 1,600 convictions, thousands of prosecutions, including police officers, those are real reforms. It's not a perfect society. But under the substantial evidence standard, the IJ did more than enough here. There's no evidence here compelling the conclusion that the IJ did anything wrong. And there's no evidence that he did anything other than a textbook application of Bringus and his progeny. There's no evidence that the IJ left on the table here. He was very careful, very carefully attended to everything that she brought to the table. And the board affirmed that. It brought all of that good language when it did her affirmance, as you pointed out, Judge. The board said that there was no error in the IJ's denial. He found no clear error in his findings. It cited to the entirety of the IJ's unable or unwilling analysis. It explicitly affirmed the IJ's treatment of Petitioner's evidence because Petitioner was not asking for a review of the evidence. She had cited legal error. She said he had misapplied the dichotomy between unable or unwilling. So it's asking the board to review how the IJ applied the standard. And it did that. So all of that comes in. So having done that, having followed Bringus, having not used the magic words but done the proper mechanism of the application, there's no legal error here and there's no failure of the IJ to look at any of the evidence. As you said, Judge, the agency is not required to inventory the evidence. It just has to act as though it has reviewed it. There's nothing in Petitioner's specific affidavits that my friend was talking about that undercut anything that the IJ found. It's just sort of more color in terms of the sympatheticness of her circumstances, but it doesn't actually shed any more light on whether or not the government would be unable or unwilling to help her. She's very sympathetic. Her circumstances are sympathetic, but they're not meritorious in terms of filling that gap in proof that she needed to fill. I could go into more detail on these things, but not hearing any questions, I'm prepared to rest on the briefs. It appears there are no further questions or no questions. Thank you. Your Honor, I'd just like to make two points. So as to the ability, my friend mentioned that there were a hiring of the National Civil Police, and that's in the country conditions evidence. They have 40,000 National Civil Police, and they hired 4,000 the same year that there was an 8 percent increase in femicides. It is clear, based on the country conditions evidence, that police personnel staffing police stations and handcuffs don't solve the issues with domestic violence. What solves these issues are specialized training, which that country lacks. Even medical personnel, who in this country screen women for signs of domestic violence, don't do that in Guatemala because they don't have the specialized training to do so. This shows that structurally within Guatemala, there is a complete lack of training to detect these issues and also their customs. The reason why she didn't go to the police, although she stated she didn't know, which by the way, if you do report an act of domestic violence, you should expect that someone would get arrested. It shouldn't be an I don't know answer. That proves my point that the petitioner, she's unsure of the police response, and not only that, she didn't report it because she stated that she didn't know if the police would take it seriously since she was an unwed mother of children. From the beginning of Letty's story, when she was 17, she met Francisco, and her parents urged her not to be around him. She decided to move in with him when she was 18 and have children with him. Throughout that time, her family blamed her for the abuses that she suffered, and her father didn't want her to take her back in. Had the immigration judge considered that evidence and the customs that are prevalent or pervasive in the country with regard to how women are viewed and treated, that would have been definitely a different conclusion. I think that is substantial evidence that would compel a different conclusion in this particular case. And those are the points that I'd like to make, Your Honors, and if you have any questions. All right. Thank you very much.  Thank you, Your Honor. We thank both counsel for the arguments and the cases submitted, and we are adjourned. All rise.
judges: THOMAS, MILLER, Molloy